

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 18, 1995

The Honorable Sherry L. Robinson
Waller County Criminal District Attorney
836 Austin Street, Suite 109
Hempstead, Texas 77445

Opinion No. DM-368

Re: Whether the 1983 revision of the provisions of the Optional County Road Law of 1947 as part of subchapter C of article 6702-1, V.T.C.S., now repealed and codified in chapter 252 of the Transportation Code, rendered a county's earlier adoption of that law "moot," and related questions (RQ-795)

Dear Ms. Robinson:

You advise that Waller County adopted the Optional County Road Law of 1947 soon after its passage. Act of Apr. 24, 1947, 50th Leg., R.S., ch. 178, 1947 Tex. Gen. Laws 288. That act, codified as V.T.C.S. article 6716-1, provided for the adoption of its provisions on a local option basis by majority vote of county voters. *Id.* § 2, at 289.

Article 6716-1 was repealed in 1983 by the County Road and Bridge Act. Act of May 20, 1983, 68th Leg., R.S., ch. 288, § 2, 1983 Tex. Gen. Laws 1431, 1526. The provisions of article 6702-1, the County Road and Bridge Act, contained, however, in subchapter C thereof, captioned "Court/Engineer System," substantially the same provisions as those of the repealed Optional County Road Law of 1947, including the provisions for the optional adoption of the "Court/Engineer System" by majority vote of the county's voters. *Id.* sec. 1, § 3.201, at 1470-71. The article 6702-1 provisions were in turn codified in 1995 without substantive change in title 6, subtitle C (chapters 251 to 257) of the Transportation Code; in particular, the provisions of article 6702-1, subchapter C were placed in Transportation Code chapter 252, subchapter D, captioned "County Road Department System." *See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, §§ 1 (enacting Transp. Code chs. 251-257), 24 (repealing V.T.C.S. art. 6702-1), 1995 Tex. Sess. Law Serv. 1025, 1151-95, 1870-71; *see also id.* § 1, at 1031 (to be codified at Transp. Code § 1.001) (codification without substantive change). You ask whether the fact that the Optional County Road Law was repealed in 1983 rendered the county's adoption of that law "moot," making applicable the provisions which would otherwise govern absent the voters' adoption of the optional law. *See* V.T.C.S. art. 6702-1, subchs. A, B ("Commissioners as Ex Officio Road Commissioners," "Court/Road Commissioner or Road Superintendent System"), *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 24, 1995 Tex. Sess. Law Serv. 1025, 1870-71.

Subchapter C of article 6702-1, the "Court/Engineer System," is characterized in Mr. Brooks's 1989 treatise, *County and Special District Law*, as requiring, on the law's adoption, "the commissioners court to administer and maintain the county road system on a county-wide basis and not a precinct-by-precinct basis," with "the county road engineer as the 'chief executive officer.'" DAVID B. BROOKS, COUNTY AND SPECIAL DISTRICT LAW § 40.19 (Texas Practice 1989); *cf.* V.T.C.S. art. 6702-1, § 3.001 (repealed 1995) (individual county commissioners act as "ex officio road commissioners of their respective precincts"). Mr. Brooks's treatise still refers to the provisions, which had been subchapter C of article 6702-1 since 1983, as the Optional Road Law of 1947, "also known as the Unit Road Law." Indeed, the provisions of the Optional County Road Law of 1947, although revised as to their language when incorporated in subchapter C of article 6702-1 in 1983, appear to be virtually identical in substance to those of subchapter C. The bill analysis of the bill adopting article 6702-1, of which subchapter C is a part, indicates that all the subchapter C provisions derive from those formerly in the Optional County Road Law and that provisions of all the sections of the latter were carried forward into subchapter C. The bill analysis acknowledges that the bill "does change and delete some language in existing law, but these changes are not significant enough, in this committee's opinion, to warrant section-by-section explanation." Senate Comm. on Transportation, Bill Analysis, S.B. 148, 68th Leg., R.S. (1983).

The only substantive change we find made from the Optional Road Law's provisions in revising them in 1983 as subchapter C of article 6702-1 is the removal of the ceiling on the engineer's annual salary, set in section 6 of the Optional Road Law as $12,000. However, we note that the $12,000 ceiling amount had originally been set at $7,200 when the Optional Road Law was adopted in 1947, and had been increased to $12,000 by a 1957 amendment to that law--that is, before the Optional Road Law was repealed and carried forward as subchapter C of article 6702-1 in 1983. Act of Feb. 16, 1955, 54th Leg., R.S., ch. 17, 1955 Tex. Gen. Laws 22. Various other provisions of the Optional Road Law had also been amended prior to 1983. Act of Apr. 25, 1957, 55th Leg., R.S., ch. 176, 1957 Tex. Gen. Laws 371.[1] We note too that subsequent to the 1983 adoption of article 6702-1, and subchapter C as a part thereof, the legislature has also amended section 3.211 of subchapter C to raise the threshold amounts for purchases requiring competitive bidding, which amount is currently $15,000. Act of May 25, 1991, 72d Leg., R.S., ch. 786, 1991 Tex. Sess. Law Serv. 2783; Act of May 29, 1993, 73d Leg., R.S., ch. 757, 1993 Tex. Sess. Law Serv. 2956.

If it were argued that a new election was required to readopt the provisions in question when they were placed in subchapter C in 1983 with only the minor substantive change mentioned above, that argument would also suggest that a new election would have been required to readopt the law after each of the other changes mentioned, both before and after the 1983 revision. We find no indication that the legislature intended that new elections were necessary in order to implement the law as changed by each of these

---

[1]Provisions added by this act are discussed below in connection with your other question.

amendments, nor do we find any constitutional requirement of such. *Cf. Slack v. State*, 136 S.W. 1073 (Tex. Crim. App. 1911) (where county has voted to license liquor sales, subsequent remedial amendments of licensing law by legislature takes effect in county without necessity for new vote to adopt such changes). In any case, if the county's voters wish to abandon the provisions of subchapter C, they may do so through the petition and election procedures provided for in section 3.201(c), now in section 252.301 of the Transportation Code. In answer to your question, we do not believe that a court would find that the 1983 revision of the provisions of the Optional Road Law as part of subchapter C of article 6702-1 rendered the county's earlier adoption of the law "moot." The county continues to operate under the subchapter C provisions--now, chapter 252, subchapter D, Transportation Code--unless it votes to abandon those provisions.

You also ask, if the county has adopted and operates under the subchapter C provisions, whether it is required to hire a "licensed professional County Road Engineer." Subchapter C of article 6702-1, again, is now codified as chapter 252, subchapter D, Transportation Code. Transportation Code section 252.304 provides that the commissioners court is to appoint a county road engineer who must "be a licensed professional engineer experienced in road construction and maintenance . . . and . . . meet the qualifications required by the Texas Department of Transportation for its district engineers." In 1957, however, language was added to the predecessor provisions of section 252.304 creating an exception to the requirement that a licensed engineer be appointed. Act of Apr. 25, 1957, 55th Leg., R.S., ch. 176, 1957 Tex. Gen. Laws 371. The 1957 amendment read in part:

> If the Commissioners Court is not able to employ a licensed professional engineer *for any reason*, then the Commissioners Court is authorized to employ a qualified road administrative officer, who shall be known as the County Road Administrator, to perform the duties of the County Road Engineer. The County Road Administrator shall have had experience in road building or maintenance or other types of construction work qualifying him to perform the duties imposed on him, but *it shall not be necessary that he have had any fixed amount of professional training or experience in engineering work. The County Road Administrator shall perform the same duties as are imposed upon the County Road Engineer, and all references in other sections of this Act to the county road engineer include and apply to the County Road Administrator. [Emphasis added.]

The 1957 addition was codified virtually verbatim in 1983 in section 3.204 of article 6702-1, including the "for any reason" language emphasized in the above quote. The article 6702-1 language was in turn codified in 1995 in section 252.304. The current codification of this language in Transportation Code section 252.304 omits the words "for any reason"; but, again, the 1995 Transportation Code was expressly a nonsubstantive revision. In any case, we think it clear from the detailed provisions for the appointment of a county road administrator in lieu of a licensed county road engineer, that the commissioners court is not required under all circumstances to appoint a licensed county

road engineer when the county has adopted the Optional Road Law, or as it is now called in the Transportation Code, "the "County Road Department System." You ask further, however, under what circumstances the commissioners court may be considered, in the words of the provisions, as "unable" to appoint a licensed county road engineer so that a county road administrator may be appointed instead, and specifically whether "financial inability and/or not enough work for a full-time position" would be sufficient reasons.

We note first that we do not believe that "not enough work for a full-time position" would in itself be sufficient reason for not employing an engineer. Nothing in the applicable provisions requires that the engineer's position—or, for that matter, the administrator's position, if an administrator is employed instead of an engineer—be full-time. "Not enough work for a full-time position" would, however, be an adequate reason if, for example, it were also the case that an engineer could not be found to take the position on a part-time basis at the salary the county could pay. As a general matter, for the reasons given below, we believe that so long as the reasons determined on by the commissioner's court for not employing an engineer indeed reflect factual conditions under which the county is "unable" to employ an engineer, "any reason" would suffice for its determining to appoint a road administrator instead.

Again, the original 1957 amendment as well as the language of section 3.204 of now repealed article 6702-1 expressly provided that the commissioners may appoint a county road administrator instead of a licensed county road engineer if it "is not able . . . *for any reason*" (emphasis added) to employ the latter. These provisions as nonsubstantively revised in Transportation Code section 252.304 must be read to carry the same meaning, although the Transportation Code revision omits the "for any reason" language. Two attorney general opinions have addressed the scope of this exception to the requirement that a licensed engineer be appointed; both dealt specifically with Bexar County's not having employed such an engineer. Attorney General Opinion M-1149 (1972), in response to a request from the Bexar County District Attorney, focused on the "for any reason" language of the exception, then found in section 5 of now repealed article 6716-1, and concluded that the commissioners court had discretion which, "in the absence of abuse," would be assumed to have been validly exercised if it determined there was a reason why a licensed engineer could not be employed and employed a county road administrator instead. Attorney General Opinion H-201 (1974), at the request of the Texas State Board of Registration for Professional Engineers, was asked to reconsider the conclusion of Attorney General Opinion M-1149 (1972). Attorney General Opinion H-201 considered the language of the emergency clause of the 1957 bill adding the exception—to the effect that the exception was necessary because of the scarcity of professional engineers and the limitations on the engineer's salary then in the act. The opinion also recognized a "need for licensed professional engineers to design today's modern superhighways." It concluded that "[w]here it can be shown that a licensed professional engineer, who meets the standards authorized by the Commissioners' Court, is available and willing to accept the job, it may be an abuse of discretion for the Commissioners Court to hire a road administrator."

Notably, although Attorney General Opinion H-201 could be read to suggest that the only legitimate reasons for not employing a licensed professional county road engineer would be those set out in the emergency clause of the bill adding the exception--that is, the scarcity of professional engineers and the limitations on the engineer's salary--it nevertheless concluded only that the county's not employing an engineer for other reasons "*may* be an abuse of discretion." (Emphasis added.) It is our opinion that the reasons invoked for utilizing emergency procedures for the exception's adoption should not be read strictly to limit as a matter of law the broad language set out in the text of the exception itself. If this were the case, as the ceiling on the engineer's salary was removed from the provisions in 1983, the exception would now be virtually nonexistent: where there was no limit on what the county could pay, it would be rather rare, we think, that the "scarcity" of engineers would be such that the county could not employ one. For this exception--which the legislature has left in the provisions now for over ten years since the engineer's salary limitations were removed--to be given any current substance, it cannot, we think, be limited to only those parameters suggested in the emergency clause.[2]

We note that both Attorney General Opinion M-1149 (1972) and Attorney General Opinion H-201 (1974) cited, in support of their conclusions, the provision of the state's engineer licensure and practice law, the Texas Engineering Practice Act, that the "Act shall not apply to . . . road maintenance or betterment work undertaken by the commissioners court of a county." V.T.C.S. art. 3271a, § 19(b). Attorney General Opinion M-1149 stated that "[b]ecause of this exclusionary provision in Article 3271a, the specific provisions of Article 6716-1 [now Transportation Code section 252.304] are controlling." Attorney General Opinion H-201, on the other hand, opined that "the more logical interpretation" of the exclusion "is to apply such descriptive terms to the more routine maintenance and betterment work . . . rather than . . . to traditional engineering work involving design, drawings, and supervision requiring professional engineering expertise." We do not believe that the referenced "exclusion" in the Engineering Practice Act, which has been in that act since its 1937 adoption, should be taken to limit situations in which a road administrator rather than an engineer could be employed under the exception now section 252.204 at issue here, which was first adopted in 1957. We find nothing in the applicable provisions thus limiting the circumstances in which a road administrator could be employed. In any case, where a road administrator was employed and it was determined that engineering services were also required, such services could be obtained by the county's also employing an engineer as necessary, for instance on a contract basis. Thus a county could operate with a road administrator and still engage

---

[2]We note, too, that such a restrictive reading would by implication suggest that the commissioners court's ability, under section 252.308, Transportation Code, to designate a "qualified administrative officer to perform the county road engineer's duties during any period in which the county road engineer is absent or unable to perform those duties" should also be similarly restricted--restrictions for which we find no basis in the applicable provisions.

engineering services where necessary, for instance, "to design today's modern superhighways."[3]

In conclusion, the commissioners court, under section 252.304 of the Transportation Code, may employ a road administrator instead of an engineer if "for any reason" it is, in fact, unable to employ an engineer. "Financial inability," for example, would, we think, be a sufficient reason if it were determined the county was indeed financially unable to employ an engineer. Again, the commissioners court has discretion in making such determinations in the first instance, subject to judicial review. To the extent that Attorney General Opinion H-201 may be inconsistent with this opinion, it is disapproved.

## S U M M A R Y

The 1983 revision of the provisions of the Optional County Road Law of 1947 as part of subchapter C of article 6702-1 did not render a county's earlier adoption of that law "moot." Rather, the county continues to operate under the provisions, now codified in chapter 252, subchapter D, Transportation Code, unless it votes to abandon those provisions. The commissioners court of a county operating under said system may employ a road administrator instead of an engineer if, for instance, it determines that the county is financially unable to employ an engineer, or that for any other reason the county is in fact unable to employ an engineer. The commissioners court has discretion in making such determinations in the first instance, subject to judicial review

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by William Walker
Assistant Attorney General

---

[3]Please note, however, that we do not attempt to address here particular situations in which a county employing a road administrator might also need to engage engineering services.